# EXHIBIT "A"

# Camelback Title Agency, LLC

When recorded return to:
HOMECOMINGS FINANCIAL NETWORK, INC.
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
REDACTED

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20051706877 11/09/2005 16:49
20775-5-2-2--
ELECTRONIC RECORDING

———— State of Arizona ————————— Space Above This Line For Recording Data ————

# DEED OF TRUST
## (With Future Advance Clause)
**MIN:** REDACTED

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is .NOVEMBER 4TH, 2005......... and the parties, their addresses and tax identification numbers, if required, are as follows:

   GRANTOR:   JOE A. DELGADO AND FRANCES M. DELGADO, HUSBAND AND WIFE, AS JOINT TENANTS

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   TRUSTEE:   CAMELBACK TITLE AGENCY
                2920 NORTH 7TH STREET, SUITE 110, PHOENIX, AZ 85014

   LENDER:   HOMECOMINGS FINANCIAL NETWORK, INC.
               4350 VON KARMAN AVENUE, #100
               NEWPORT BEACH, CA 92660

   **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2. **CONVEYANCE.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of MERS, with power of sale, the following described property:
   Legal description attached hereto and made a part hereof

   The property is located in ...MARICOPA............................................... at ......5828 WEST REDFIELD........
                         (County)
   ROAD.................................., .........GLENDALE........................., Arizona ...85306.........
       (Address)                 (City)                    (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Provided, that if Trustor shall pay in full all amounts owed under the Secured Debt at the time and in the manner provided therein, shall pay any and all other sums payable under this Deed of Trust, and shall perform as and when due all of the obligations of the Secured Debt, then, in such case, all right, title, and interest of Lender and Trustee in the Property shall terminate and become void, and Trustee, upon receipt of the written request of Lender, shall reconvey, without warranty, the Property, and the grantees in such reconveyance may be described as "the person or persons legally entitled thereto." Grantor understands and agrees that MERS holds only legal title to the interests granted by Grantor in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .........23,200.00/......................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
       Borrower(s) Promissory Note to Lender dated   NOVEMBER 4TH, 2005         in the principal sum of
       U.S. $      23,200.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on   DECEMBER 1ST, 2020.

**ARIZONA - DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)                        (page 1 of 4)
©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-AZ 1/17/2001     **MFAZ7086 (4/01) / 042-616736-2**

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this assignment and effective as to third parties on Grantor's default when Lender takes actual possession of the Property, when a receiver is appointed, or as the law otherwise provides. Grantor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-AZ 1/17/2001   MFAZ7086 (4/01) / 042-616736-7   *(page 3 of 4)*

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Trustee shall apply the proceeds of the sale in the following order: (1) to the costs and expenses of exercising the power of sale and the sale, including the payment of Trustee's fees, and reasonable attorney's fees actually incurred; (2) to the payment of the contract or contracts secured by this Deed of Trust; (3) to the payment of all other obligations provided in or secured by this Deed of Trust; (4) to the junior lienholders or encumbrancers in order of their priority. After payment in full to all junior lienholders and encumbrancers payment shall be made to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-AZ 1/17/2001       MFAZ7086 (4/01) / 042-616736-7

Case 2:16-bk-08714-PS    Doc 26-2    Filed 07/20/18    Entered 07/20/18 10:47:15    Desc
Exhibits A - E    Page 4 of 23

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. **WAIVERS.** Except to the extent prohibited by law, Grantor waives any rights of appraisement relating to the Property.

27. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:
   ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
   ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
   ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
   ☒ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
      ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other .................................................
   ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*Frances M. Delgado*          11/4/05          *Joe A. Delgado*          11/4/05
...........................................          .............          .........................................          ............
(Signature)   FRANCES M. DELGADO   (Date)   (Signature)   JOE A. DELGADO   (Date)

**ACKNOWLEDGMENT:**
STATE OF ...... Arizona ................, COUNTY OF ...... Maricopa ...................} ss.
(Individual) This instrument was acknowledged before me this ...... day of ...November ...2005......
by ...Frances M. Delgado and Joe A. Delgado.........................
My commission expires:

(OFFICIAL SEAL)
MONICA D. HERNANDEZ
NOTARY PUBLIC - STATE OF ARIZONA
MARICOPA COUNTY
My Commission Expires Sept. 14, 2008

...Monica D. Hernandez.........
(Notary Public)

---

**REQUEST FOR RECONVEYANCE**
(Not to be completed until paid in full)

**TO TRUSTEE:**
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel this Deed of Trust, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

...................................................................          ...........................................
(Authorized Lender Signature)                                               Date

---

REDACTED

# LEGAL DESCRIPTION

Lot 209, of ROYAL ESTATES WEST 4, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 208 of Maps, Page 16.

lgldescr

# EXHIBIT "B"

## NOTE

NOVEMBER 4TH, 2005 .......................................... PHOENIX ................................................, AZ ............
*Date* .......................................................................... *City* ...................................................... *State*

5828 WEST REDFIELD ROAD ........................... GLENDALE .......................... AZ ............. 85306 ......
*Property Address* ................................. *City* .................................... *State* .................... *ZIP Code*

### 1. DEFINITIONS

The headings at the beginning of each section are for convenience only and are not to be used in interpreting the text of the section. "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). The Lender is HOMECOMINGS FINANCIAL NETWORK, INC. . "You" or "your" means the Lender and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY

For value received, I promise to pay to you, or your order, the **PRINCIPAL** sum of ... TWENTY THREE ..... THOUSAND TWO HUNDRED AND NO/100 ....................................... Dollars $ ........ 23,200.00 ...., plus interest. No additional advances are contemplated under this Note.

### 3. INTEREST

I agree to pay interest on the outstanding principal balance at the rate of .... 11.650 .... % per year until the full amount of principal has been paid. Interest accrues on the principal remaining unpaid from time to time, until paid in full. The interest rate and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan.

**ACCRUAL METHOD:** Interest will be calculated on a .... 30/360 ............................................. basis. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, .... at same rate as above ........................................................................ .

For purposes of this paragraph, maturity occurs:
(1) On the date of the last scheduled payment of principal; or
(2) On the date you accelerate the due date of this loan (demand immediate payment).

### 4. PAYMENTS

I agree to pay this note in monthly payments. I will make my monthly payment on the .... 1ST .......... day of each month beginning on JANUARY 1ST, 2006 ........ . The monthly payment will be $........ 232.41 ...... . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note or until my balloon payment is due, if a balloon payment is indicated below. Unless otherwise required by law, each payment I make on this loan will be applied first to any charges I owe you other than principal and interest, then to interest that is due, and finally to principal. The final payment of the entire unpaid balance of principal and interest will be due ... DECEMBER 1ST, 2020 ...., which is called the "Maturity Date."

The actual amount of my final payment will depend on my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan, subject to any balloon payment indicated below.

I will make my monthly payments at ........ 4350 VON KARMAN AVENUE, #100, NEWPORT ............. BEACH, CA, 92660 ........................ or at a different place if required by you.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell you in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment penalty. You will use all of my prepayments to reduce the amount of principal that I owe under this note. I must still make each later payment in the original amount as it becomes due until this note is paid in full.

☒ **BALLOON PAYMENT.** This loan is payable in full at maturity. I must repay the entire principal balance of the loan and unpaid interest then due. The Lender is under no obligation to refinance the loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a Lender, which may be the Lender I have this loan with, willing to lend me the money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same Lender.

**LATE CHARGE:** If a payment is not made within .... 15 ............. days after it is due, I agree to pay a late charge of .... 5 % of my overdue payment or $10.00, whichever is less .................................. .

☒ **BAD CHECK CHARGE.** If I make a payment by a check that is dishonored, I agree to pay you a fee of $ .. 25.00 ...................... for each such check, or the amount charged to you by the depository institution, whichever is greater.

### 5. SECURITY

My obligations under this note are separately secured by a Mortgage/Deed of Trust dated the same date as this note.

If this note is secured by a Deed of Trust, as stated in that Deed of Trust "Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released."

Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

*(page 1 of 2)*

1984, 1991, 1996 Bankers Systems, Inc., St. Cloud, MN Form RFC-CESMNLAZ 7/31/2002
For use in: Alabama, Alaska, Arizona, Hawaii, Mississippi, Montana, Nevada, New Mexico, Oregon, South Dakota, Tennessee, Virginia, Washington

MFCD6039 (1/03) / 042-616736-7

**CREDITOR-PLACED INSURANCE NOTICE: I am required to maintain insurance on the property securing this note to protect your interest until this note is paid. If I fail to provide evidence of insurance on the property to you, you may place insurance on the property and I will be responsible to pay for the costs of that creditor-placed insurance.**
**At your option, the method of billing for creditor-placed insurance charges may create a balloon payment or extend the maturity date of the debts secured by this agreement.**

**6. APPLICABLE LAW:** This note and any agreement securing this note will be governed by the laws of the state where the property securing this note is located. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**7. PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**8. REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**9. ASSUMPTION:** This note and any document securing it cannot be assumed by someone buying the secured property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the property securing this note, I will be in default on this loan. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

**10. DEFAULT:** Subject to any limitations in the "REAL ESTATE AND RESIDENCE SECURITY" paragraph above, I will be in default on this note if any of the following occur:
  (1) I engage in fraud or material misrepresentation, by my actions or failure to act, in connection with any phase of this note;
  (2) I fail to make a payment on time or in the amount due;
  (3) I take any action or inaction which adversely affects the collateral or your rights in the collateral, including but not limited to: (a) failure to maintain property insurance and flood insurance, if required, on the dwelling; (b) transfer of the property; (c) failure to maintain the property; (d) use of the property in a destructive manner; (e) failure to pay taxes on the property; (f) death; (g) the property is taken through eminent domain; (h) a judgment is filed against me and subjects the property to action that adversely affects your interest; or (i) a prior lien holder forecloses on the property and as a result, your interest is adversely affected.

**11. REMEDIES:** Subject to any limitations in the "REAL ESTATE AND RESIDENCE SECURITY" section above, if I am in default on this loan or any agreement securing this loan, you may:
  (1) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
  (2) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
  (3) Make a claim for any and all insurance benefits or refunds that may be available on my default;
  (4) Use any remedy you have under state or federal law; and
  (5) Use any remedy given to you in an agreement securing this loan.
By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**12. COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). In **South Dakota**, costs include, but are not limited to, attorneys' fees when you are a "regulated lender" under S.D.C.L. § 54-3-14, as amended, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the note. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**13. WAIVER:** I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**14. OBLIGATIONS INDEPENDENT:** I understand that my obligation to pay all of the amounts owed under this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**15. CREDIT INFORMATION:** I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others. I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**16. PURCHASE MONEY LOAN:** If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE. I have received a copy of this note.**

_Frances M. Delgado_
Date   FRANCES M. DELGADO          -Borrower

11/4/05  _Jose A. Delgado_
Date   JOSE A. DELGADO          -Borrower

Date _____ -Borrower

Date _____ -Borrower

Bankers Systems ___ Form RFC-CESMNLAZ 7/31/2002
For use in: Alabama, Alaska, Arizona, Hawaii, Mississippi, Montana, Nevada, New Mexico, Or...
MFCD6039 (1/05) 042-616248...

PAY TO THE ORDER OF
JP MORGAN CHASE BANK
AS INDENTURE TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

Judy Faber, Vice President

Without Recourse
Pay To The Order Of
RESIDENTIAL FUNDING CORPORATION
                         (Sign Original Only)
_Linda Wentlaff_               (page 2 of 2)
Linda Wentlaff, Assistant Secretary
Homecomings Financial Network, Inc.
A Delaware Corporation

REDACTED

## ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

| | |
|---|---|
| NOTE DATE: | 11/04/2005 |
| LOAN AMOUNT: | $23,200.00 |
| BORROWER NAME: | Frances M. Delgado |
| | **Joe A. Delgado** |
| PROPERTY: | 5828 West Redfield Road |
| | **Glendale, AZ 85306** |

**PAY TO THE ORDER OF:**

Residential Funding Company, LLC

**WITHOUT RECOURSE**

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, National Association, as Indenture Trustee for Home Equity Loan Trust 2005-HS2, Home Equity Loan-Backed Term Notes, Home Equity Loan-Backed Variable Funding Notes *by Residential Funding Company, LLC f/k/a Residential Funding Corporation Attorney in fact*

Fau Graham

**Signor: Faye Graham**
**Title: Authorized Officer**

REDACTED

## ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

NOTE DATE:          11/04/2005
LOAN AMOUNT:        $23,200.00
BORROWER NAME:   Frances M. Delgado
                 **Joe A. Delgado**
PROPERTY:            5828 West Redfield Road
                 **Glendale, AZ 85306**

**PAY TO THE ORDER OF:**

Stelis, LLC,

**WITHOUT RECOURSE**

Residential Funding Company, LLC

*Faye Graham*
Signor: **Faye Graham**
Title: **Authorized Officer**



# <u>ALLONGE TO THE NOTE</u>

REDACTED

**Previous Loan #:**
**Borrower:** FRANCES M. DELGADO    JOE A. DELGADO
**Date of Note:** 11/04/2005
**Loan Amount:** $23,200.00
**Property Address:** 5828 WEST REDFIELD ROAD, GLENDALE, AZ  85306

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: _____ , Without any recourse, representation or warranty, express or implied

### STELIS, LLC

Signature: _____

Printed Name:  <u>STEVE FULLUM</u>

Title:  <u>Assistant Vice President</u>

# EXHIBIT "C"

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20140635180   09/25/2014   10:57
ELECTRONIC RECORDING

2164648-3-1-1--
Yorkm

Prepared By and Return To:

Kristin Douglas
Partners for Payment Relief DE II, LLC
3748 West Chester Pike, Suite 103
Newtown Square, PA 19073
888-879-4997

_____Space above for Recorder's use_____

# ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Homecomings Financial Network, Inc., its successors and assigns** whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834, does by these presents hereby convey, grant, bargain, sell, assign, transfer, set over and deliver unto **Partners for Payment Relief DE II, LLC** whose address is **3748 West Chester Pike, Suite 103, Newtown Square, PA 19073**, the following described deed of trust (the "Deed of Trust"), together with the certain promissory note(s) described therein (the "Note(s)") together with all rights therein and thereto, all liens created or secured thereby, and any and all interest due thereon.
Deed of Trust is recorded in the State of AZ, County of Maricopa.

| | |
|---|---|
| Instrument: | 2005-1706877 |
| Date of Recordation: | 11/09/2005 |
| Date of Deed of Trust: | 11/04/2005 |
| Original Grantor(s): | JOE A. DELGADO AND FRANCES M. DELGADO, HUSBAND AND WIFE, AS JOINT TENANTS |
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC., ITS SUCCESSORS AND ASSIGNS |
| Original Loan Amount: | $23,200.00 |
| Property Address: | 5828 WEST REDFIELD ROAD, GLENDALE, AZ 85306 |
| Legal Description: | see attached Exhibit 'A' |
| MIN: | REDACTED |

## SEE PAGE 2 FOR DOCUMENT DATE AND SIGNATURES

Page 1 of 3

IN WITNESS WHEREOF, the undersigned entity by all due authority has caused this instrument to be executed by its duly authorized officer(s), representative(s) or Attorney-in-Fact this 25 day of Sept , 2014.

Institution: <u>Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Homecomings Financial Network, Inc., its successors and assigns</u>

By: *David A. Van Horn*
    David A. Van Horn

Witness: *Kristin Douglas*
      Kristin Douglas

Witness: *Barb Faust*
      Barb Faust

Commonwealth of: <u>Pennsylvania</u>       County of: <u>Delaware</u>

On this date of September 25, 2014 , before me, the undersigned authority, a Notary Public commissioned, qualified and acting within and for the aforementioned State and County, personally appeared the within named David A. Van Horn , known to me (or identified to me on the basis of satisfactory evidence) to be the <u>ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), ITS SUCCESSORS AND ASSIGNS</u> and are duly authorized to execute the foregoing instrument for and in the name and on behalf of said corporation and that said corporation executed the same, and further stated and acknowledged they that had so signed, executed and delivered said instrument for the consideration, uses and purposes therein mentioned and set forth.

Witness my hand and official seal on the date hereinabove set forth.

*Chelsea Kimpel*

Notary Public: Chelsea Kimpel
My Commission Expires: 8/22/17

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHELSEA KIMPEL, Notary Public
Newtown Twp., Delaware County
My Commission Expires August 22, 2017

# EXHIBIT 'A': LEGAL DESCRIPTION

Lot 209, of ROYAL ESTATES WEST 4, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 208 of Maps, Page 16.

Page 3 of 3

# EXHIBIT "D"

Record & Return To:

Homecomings Financial, LLC
Attention: 2nd Lien Loss Mitigation
2711 North Haskell Ave Suite 900
Dallas, TX 75204

REDACTED

REDACTED

----------------------------------[Space Above This Line For Recorder's Use]-----------------------------

REDACTED

## FIXED RATE LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") made this Twenty-Fourth day of April, 2009, ("Effective Date") between Frances Delgado and Joe Delgado ("Borrower") and Homecomings Financial, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated 11/4/2005, in the original principal amount of Twenty Three Thousand Two Hundred Dollars and No Cents ($23,200.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note. Said Security Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at 5828 WEST REDFIELD ROAD, GLENDALE, AZ 85306, which real property is more particularly described as follows:

(Legal Description)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is Twenty Two Thousand Eight Hundred Eighty Seven Dollars and Forty Four Cents ($22,887.44). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date.

2. Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 5% per year from the Effective Date.

3. Borrower promises to make monthly principal and interest payments of $129.82, beginning on 6/1/2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on 12/1/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

4. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

5. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

6. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

7. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

8. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

_Frances Delgado_
Frances Delgado

_____

Joe Delgado

Homecomings Financial, LLC

By:_____

Title:_____

# EXHIBIT "E"

**FCI Lender Services, Inc.**
Customer Service: **(800) 931-2424**   Fax: **714-282-5775**
Customer Information: **www.trustfci.com NMLS #4920, BRE #01022780**

**Report Date:** 05/09/2018

## Loan Master Report

| Company | **FCI Lender Services, Inc.** | | **Account Number:** | REDACTED |
|---|---|---|---|---|
| | PO BOX 27370 | | **Primary Borrower:** | FRANCES DELGADO |
| | Anaheim CA 92809-0112 | | **Primary Property:** | 5828 WEST REDFIELD ROAD |
| | 800-931-2424 | | | GLENDALE AZ GLENDALE |

### Account Activity From 7/28/2016

| Transaction Date | Payment Due Date | Reference | Description | Transaction Amount | Interest | Principal | LateChgs | Other | Reserve | Impound | CurrentBalance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | $19,241.49 |
| 01/10/2017 | 01/10/2017 | 14052-3 | OtherCash | $16.10 | $0.00 | $0.00 | $0.00 | $0.00 | $16.10 | $0.00 | $19,241.49 |
| 01/10/2017 | | 14052-3 | Late Charge | $0.00 | | | | $0.00 | | | |
| 02/07/2017 | 02/07/2017 | 14252-1 | OtherCash | $958.02 | $0.00 | $0.00 | $0.00 | $0.00 | $958.02 | $0.00 | $19,241.49 |
| 02/07/2017 | | 14252-1 | Late Charge | $0.00 | | | | $0.00 | | | |
| 03/09/2017 | 03/09/2017 | 14481 | OtherCash | $659.60 | $0.00 | $0.00 | $0.00 | $0.00 | $659.60 | $0.00 | $19,241.49 |
| 03/09/2017 | | 14481 | Late Charge | $0.00 | | | | $0.00 | | | |
| 04/06/2017 | 04/06/2017 | 14638 | OtherCash | $659.60 | $0.00 | $0.00 | $0.00 | $0.00 | $659.60 | $0.00 | $19,241.49 |
| 04/06/2017 | | 14638 | Late Charge | $0.00 | | | | $0.00 | | | |
| 05/08/2017 | 05/08/2017 | 014812 | OtherCash | $111.61 | $0.00 | $0.00 | $0.00 | $0.00 | $111.61 | $0.00 | $19,241.49 |
| 05/08/2017 | | 014812 | Late Charge | $0.00 | | | | $0.00 | | | |
| 06/06/2017 | 06/06/2017 | 14989 | OtherCash | $933.19 | $0.00 | $0.00 | $0.00 | $0.00 | $933.19 | $0.00 | $19,241.49 |
| 06/06/2017 | | 14989 | Late Charge | $0.00 | | | | $0.00 | | | |
| 07/13/2017 | 07/13/2017 | 15159-1 | OtherCash | $868.67 | $0.00 | $0.00 | $0.00 | $0.00 | $868.67 | $0.00 | $19,241.49 |
| 07/13/2017 | | 15159-1 | Late Charge | $0.00 | | | | $0.00 | | | |
| 08/03/2017 | 08/03/2017 | | Adj-LC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | $19,241.49 |
| 08/03/2017 | 08/03/2017 | Reserve | Transfer | -$4,206.79 | $0.00 | $0.00 | $0.00 | $0.00 | -$4,206.79 | $0.00 | $19,241.49 |
| 08/03/2017 | | Reserve | Late Charge | $0.00 | | | | $0.00 | | | |
| 08/09/2017 | 08/09/2017 | 15360-4 | OtherCash | $670.41 | $0.00 | $0.00 | $0.00 | $0.00 | $670.41 | $0.00 | $19,241.49 |
| 08/09/2017 | | 15360-4 | Late Charge | $0.00 | | | | $0.00 | | | |
| 08/09/2017 | 08/09/2017 | Reserve | Transfer | -$670.41 | $0.00 | $0.00 | $0.00 | $0.00 | -$670.41 | $0.00 | $19,241.49 |
| 08/09/2017 | | Reserve | Late Charge | $0.00 | | | | $0.00 | | | |
| 09/08/2017 | 09/08/2017 | Reserve | Transfer | -$670.41 | $0.00 | $0.00 | $0.00 | $0.00 | -$670.41 | $0.00 | $19,241.49 |
| 09/08/2017 | | Reserve | Late Charge | $0.00 | | | | $0.00 | | | |
| 09/08/2017 | 09/08/2017 | 15553-6 | OtherCash | $670.41 | $0.00 | $0.00 | $0.00 | $0.00 | $670.41 | $0.00 | $19,241.49 |
| 09/08/2017 | | 15553-6 | Late Charge | $0.00 | | | | $0.00 | | | |
| 10/13/2017 | 10/13/2017 | 001009 | OtherCash | $425.35 | $0.00 | $0.00 | $0.00 | $0.00 | $425.35 | $0.00 | $19,241.49 |
| 10/13/2017 | | 001009 | Late Charge | $0.00 | | | | $0.00 | | | |
| 10/13/2017 | 10/13/2017 | Reserve | Transfer | -$425.35 | $0.00 | $0.00 | $0.00 | $0.00 | -$425.35 | $0.00 | $19,241.49 |
| 10/13/2017 | | Reserve | Late Charge | $0.00 | | | | $0.00 | | | |
| 11/14/2017 | 11/14/2017 | Reserve | Transfer | -$674.91 | $0.00 | $0.00 | $0.00 | $0.00 | -$674.91 | $0.00 | $19,241.49 |
| 11/14/2017 | | Reserve | Late Charge | $0.00 | | | | $0.00 | | | |
| 11/14/2017 | 11/14/2017 | 001065 | OtherCash | $674.91 | $0.00 | $0.00 | $0.00 | $0.00 | $674.91 | $0.00 | $19,241.49 |
| 11/14/2017 | | 001065 | Late Charge | $0.00 | | | | $0.00 | | | |
| 12/14/2017 | 12/14/2017 | Reserve | Transfer | -$674.89 | $0.00 | $0.00 | $0.00 | $0.00 | -$674.89 | $0.00 | $19,241.49 |


| Date | Date | Acct | Type | Amount | | | Amount | | Amount | | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/14/2017 | | Reserve | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/14/2017 | 12/14/2017 | 001133-2 | OtherCash | $674.89 | $0.00 | $0.00 | $0.00 | $0.00 | $674.89 | $0.00 | $19,241.49 |
| 12/14/2017 | | 001133-2 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/16/2018 | 01/16/2018 | Reserve | Transfer | -$954.42 | $0.00 | $0.00 | $0.00 | $0.00 | -$954.42 | $0.00 | $19,241.49 |
| 01/16/2018 | | Reserve | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/16/2018 | 01/16/2018 | 001183 | OtherCash | $954.42 | $0.00 | $0.00 | $0.00 | $0.00 | $954.42 | $0.00 | $19,241.49 |
| 01/16/2018 | | 001183 | Late Charge | $0.00 | | | $0.00 | | | | |
| 02/13/2018 | 02/13/2018 | Reserve | Transfer | -$674.91 | $0.00 | $0.00 | $0.00 | $0.00 | -$674.91 | $0.00 | $19,241.49 |
| 02/13/2018 | | Reserve | Late Charge | $0.00 | | | $0.00 | | | | |
| 02/13/2018 | 02/13/2018 | FCI-1238 | OtherCash | $674.91 | $0.00 | $0.00 | $0.00 | $0.00 | $674.91 | $0.00 | $19,241.49 |
| 02/13/2018 | | FCI-1238 | Late Charge | $0.00 | | | $0.00 | | | | |
| | | | | | $0.00 | $0.00 | $-441.32 | $0.00 | $0.00 | $0.00 | |

Case 2:16-bk-08714-PS    Doc 26-2    Filed 07/20/18    Entered 07/20/18 10:47:15    Desc
Exhibits A - E    Page 23 of 23

05/09/2018  9:23 a.m.